UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Civil Action No. _____

| | | |
|---|---|---|
| ARCHER HEALTHCARE, INC., <br> f/k/a AOS RESEARCH, INC. <br><br> Plaintiff, <br><br> vs. <br><br> JILL L. CUTHBERT-DUTCHER <br> and QUESTRA MED <br> COMMUNICATIONS, INC., <br><br> Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | **COMPLAINT** <br><br> **(JURY TRIAL DEMANDED)** |

NOW COMES Plaintiff Archer Healthcare, Inc., f/k/a AOS Research, Inc. ("Archer"), by and through the undersigned counsel complaining of Defendants Jill L. Cuthbert-Dutcher ("Dutcher") and questra med communications, inc. ("questra med"), and alleges and says as follows:

<u>NATURE OF THE ACTION</u>

This is an action under 18 U.S.C. § 1030(g), the private right of action provision of the Computer Fraud and Abuse Act ("CFAA") which allows any person who suffers damage or loss by reason of a violation of 18 U.S.C. § 1030(c)(4)(A)(i)(I) to maintain a civil action against the violator to obtain economic damages and injunctive relief or other equitable relief. Archer alleges that on multiple occasions and without authorization, questra med and Dutcher accessed competitor Archer's password-protected customer relationship management internet-based computer portal in which Archer stores confidential and proprietary business development

information and the Archer e-mail account for at least one individual after a business relationship between questra med and Archer came to an end. The action is timely brought both within two years of the date of the unauthorized access of Archer's computers and within two years of the date of Archer's discovery of same.

## THE PARTIES, JURISDICTION, AND VENUE

1. Archer is a corporation organized and existing pursuant to the laws of the State of North Carolina and has, as its principal place of business, offices located in Wilmington, New Hanover County, North Carolina.

2. questra med is a corporation organized and existing pursuant to the laws of the State of Colorado and has, as its principal place of business, offices located at 14303 E. Evans Ave., Aurora, Arapahoe County, Colorado 80014.

3. Dutcher is a citizen and resident of the State of Colorado. At all relevant times, Dutcher has been employed as the President of questra med and, upon information and belief, she has an ownership interest in questra med. Dutcher's biography as it appears on the questra med website is attached hereto as Exhibit A and incorporated by reference as if fully set forth herein. Inasmuch as Dutcher was acting in all respects in her capacity as an officer and agent on behalf of questra med, liability for her tortious conduct as alleged herein is properly imputed to questra med pursuant to the *respondeat superior* doctrine.

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, inasmuch as Archer's claim arises under federal statute.

5. The Court has personal jurisdiction over Defendants pursuant to N.C.G.S. § 1-75.4, which extends jurisdiction to the full extent permissible under the Due Process Clause of the United States Constitution, under subsection (6)c, inasmuch as the instant action arises out of

2

a claim that Dutcher and questra med account to Plaintiff for an asset or thing of value which was within the State of North Carolina at the time they acquired possession or control over it, to wit, the confidential and proprietary information Archer's Wilmington, North Carolina personnel developed and stored, and Defendants accessed, on a customer relationship database on a password-protected internet-based platform referred to herein as the "CRM System."

6. The exercise of personal jurisdiction over Dutcher and questra med comports with notions of fair play and substantial justice inasmuch as Dutcher and questra med have at times relevant to this lawsuit had meaningful contacts with the State of North Carolina. Upon information and belief, these contacts include, without limitation, the following:

a) Dutcher and her representatives have met with Archer staff at Archer's Wilmington, North Carolina offices over the course of questra med's business relationship and as alleged more fully below, representatives of questra med exchanged thousands of electronic mail communications with Archer's North Carolina employees, and for her part, Dutcher exchanged hundreds of e-mails with Archer employees in North Carolina;

b) Over the last five years, questra med has derived a majority of its revenues from companies based in North Carolina;

c) Dutcher and her company Intellyst have had a business relationship with Merz, a company based in Greensboro, North Carolina, and Dutcher has met with its representatives in North Carolina.

d) Dutcher and her company Intellyst have had a long business relationship with Glaxo Smith Kline (GSK), a company based in Raleigh, North Carolina, and Dutcher has met with its representatives in North Carolina on numerous occasions.

e) Dutcher and questra med had a business relationship with Salix Salix Pharmaceuticals ("Salix") and its successor, Valeant Pharmaceuticals International, Inc. ("Valeant") have met with their representatives in North Carolina on numerous occasions. In connection with a separate lawsuit filed by questra med in Colorado and described in greater detail below, questra med has alleged, "Archer Healthcare served as questra med's vendor on questra med's engagement with its largest and long-standing customer, Valeant."

f) Dutcher and questra med have conducted business with Call-a-Nurse in Winston-Salem, North Carolina.

7. Venue is proper.

## FACTUAL ALLEGATIONS

8. The allegations set forth in paragraphs 1 through 7 are repeated, re-alleged, and incorporated by reference as if fully set forth herein.

9. At least as early as 2010, Archer and questra med were engaged in a joint venture providing services to Salix and subsequently to its successor, Valeant. Pursuant to the terms of the joint venture, which was pitched and sold to Salix by Archer President Peter Higgins and then-questra med Business Development Director John Katter, Archer provided telephone and other patient support services to patients taking the drug Xifaxan through a program called the Hepatic Encephalopathy Living Program ("HELP") and questra med provided billing services. Net profits of the joint venture were split evenly between Archer and questra med.

10. Subsequently, questra med's then-President, Don Overcash, was replaced by Dutcher. After Dutcher took over the role of questra med President from Overcash, Dutcher announced a unilateral change to the nature of the relationship with Archer and more particularly, in derogation of the parties' agreement, she reneged on the previous documented

4

agreement for the parties to evenly split all profits. Under the new structure imposed by Dutcher, Archer would continue to perform the bulk of the services, but would no longer receive the agreed upon the even split of all profits derived from the program.

11. Over the course of the business relationship between questra med and Archer, representatives of questra med exchanged thousands of electronic mail communications with Archer's North Carolina employees, and for her part, Dutcher exchanged hundreds of e-mails with Higgins and other North Carolina employees. In addition, Dutcher and her staff visited and met with Higgins and other Archer employees numerous times at Archer facilities in North Carolina.

12. In e-mail communications with Higgins, Dutcher used the IP addresses 69.15.189.62 and 73.153.83.118. A copy of screenshots evidencing her use of these IP addresses is attached hereto as Exhibit B.

13. Katter and Higgins developed a strong professional relationship, culminating in Katter's decision to leave questra med in favor of a business development position with Archer in early 2016.

14. During Katter's employment with questra med and subsequently as he transitioned into his employment with Archer, Katter went to great lengths not to share any information questra med might claim to be confidential or proprietary.

15. Following his employment with questra med, Katter delivered a laptop computer he used during that employment to Dutcher. Katter had an Archer e-mail address which Katter had accessed after becoming an Archer employee by means of webmail an internet-based program. Upon information and belief, Katter stored the password for his Archer e-mail address on the laptop computer. Katter's Archer e-mails are stored on Archer's server.

5

Case 7:17-cv-00175-BO Document 1 Filed 08/29/17 Page 5 of 11

16. In the latter part of 2016, a Valeant brand manager sent Higgins an unsolicited email requesting a meeting with him at Valeant's US headquarters in Bridgewater, New Jersey. At that meeting the Valeant representatives expressed frustration with Dutcher and questra med. The Valeant representatives also indicated they had an interest in establishing a customer relationship with Archer and requested that Higgins submit a statement of work (SOW) for the 2017 HELP program. Upon information and belief, questra med and Archer both submitted SOW's to Valeant for the 2017 HELP program. In late 2017 Archer was notified that Archer had been selected as the vendor for the HELP program for the following 12 months beginning January 1, 2017.

17. Upon information and belief, Dutcher became convinced that Katter had done something nefarious to cause Valeant to transfer its business to Archer and she began the process of reviewing e-mails to Katter's Archer e-mail address for purposes of establishing that her belief had some basis in fact.

18. questra med has since filed an action against Katter and Archer in Arapahoe County, Colorado District Court (the "Colorado Lawsuit"). Archer's motion to dismiss for lack of personal jurisdiction is currently pending in the Colorado Lawsuit.

19. One or more of the factual allegations in the Colorado Lawsuit contained information that likely could only have been obtained from a review of Katter's Archer e-mail communications.

20. Archer has invested considerable time, money, and energy in the development of its customer relationship database. The database contains information which is valuable to its own needs and objectives, to wit, meticulously culled client and prospective customer data and information, including, without limitation, the names and contact information for customer

decision-makers, client needs, preferences, historical pricing data, timetables for future projects, and other information which is not publically available, but which was mined and developed by one or more leads generators working at Archer's Wilmington, North Carolina headquarters.

21. Archer decided in 2016 to create a means by which its national sales team might electronically access the customer relationship database on a password-protected internet-based platform which Archer commonly refers to as the CRM System. The CRM System is maintained by Archer personnel subject to password protection on Archer's computers and servers. It is accessible by authorized persons, on-line at the domain name http://aoscrm.com.

22. Archer established user names and passwords for the CRM System unique to each of its business development and sales representatives.

23. The user names and passwords were not publically available.

24. Katter's user name and password for the CRM System were sent to him by Jason Marone, a Wilmington, North Carolina-based Client Services Manager on September 14, 2016.

25. In the latter half of 2016, Archer began using a computer program called Bananatag for purposes of obtaining notifications when, and by what IP addresses, electronic mail communications from Archer employees were opened.

26. The Bananatag report for a September 23, 2016 e-mail to Katter's Archer e-mail address is attached hereto as Exhibit C and incorporated by reference as if fully set forth herein. As evidenced by the report, the email to Katter was accessed at 9:54 a.m. that day in Englewood (Arapahoe County), Colorado, by IP address 73.153.83.118, the same IP address associated with earlier emails from Dutcher at questra med.

27. Concerned that Defendants compromised Katter's Archer e-mail, Archer has undertaken a detailed forensic examination of who has accessed Katter's e-mail and the CRM

7

System, first diverting Archer's in-house information technology personnel from other projects to perform work on the forensic examination before employing an outside forensic firm.

28. Upon information and belief, in the month of September, 2016, Defendants used the IP address 73.153.83.118 to access the Archer CRM System and "hit" it 115 times, loading 6 pages comprising 700.03 KB of bandwidth.

29. Upon information and belief, in the month of November, 2016, Defendants used the IP address 73.153.83.118 to access the Archer CRM System and "hit" it 163 times, loading 73 pages comprising 886.33 KB of bandwidth.

30. Upon information and belief, in the month of January, 2017, Defendants used the IP address 69.15.189.62 to access the Archer CRM System and "hit" it 138 times, loading 18 pages comprising 735.35 KB of bandwidth.

31. Archer has heretofore been unable to ascertain which of the pages on the CRM System Defendants accessed. However, Defendants were without authorization to obtain *any* information from the CRM System.

32. Defendants would not have had a means of accessing the Archer CRM System, had they not obtained unauthorized access to the e-mail communication from Marone to Katter.

33. Defendants' access to the Archer CRM System was not authorized, and Defendants undoubtedly knew that their access to the CRM Systems was not authorized and that the CRM System contained highly confidential, trade secret, proprietary business information.

34. Counsel for Archer wrote counsel for questra med on May 10, 2017, alleging, among other things, "Ms. Dutcher has on multiple occasions accessed without authorization both Mr. Katter's Archer emails and Archer's confidential business development customer relations manager 'CRM' system." Archer's counsel outlined specific additional information regarding

8

the unauthorized access. Counsel for questra med offered no response to these allegations, and did not deny them.

## CLAIM FOR RELIEF: COMPUTER FRAUD AND ABUSE ACT

35. The allegations set forth in paragraphs 1 through 34 of Plaintiff's Complaint are repeated, re-alleged, and incorporated by reference as if fully set forth herein.

36. The Archer computers which Defendants accessed are "computers" as that term is defined in 18 U.S.C. § 1030, inasmuch as they are electronic, magnetic, or other high speed data processing devices which perform data storage functions.

37. Also for purposes of 18 U.S.C. § 1030, the computers are "protected computers" inasmuch as they are used in or affecting interstate commerce or communication.

38. Upon information and belief, Dutcher and, through Dutcher, questra med knowingly and with the intent to defraud accessed Archer's protect computers without authorization, by (1) accessing Katter's Archer e-mail account and (2) accessing Archer's CRM System using Katter's user name and password credentials which they obtained by means of their unauthorized access to Katter's Archer e-mail account.

39. As a direct and proximate result of the Defendants' unauthorized access of Archer's protected computers, Archer sustained loss during a one-year period aggregating at least $5,000 in value. Such loss includes, without limitation, the cost of responding to Defendants' offense, conducting a damage assessment, and the cost of restoring as provided in 18 U.S.C. § 1030(e)(11).

40. Archer is entitled to recover from Dutcher and questra med, jointly and severally, the economic damages Archer has suffered by virtue of their conduct, in such amount as may be established at the trial of this matter.

41. Archer will sustain irreparable harm for which there is no adequate remedy at law if Dutcher and questra med are not compelled to return to Archer all information Dutcher and questra med obtained from the CRM System and are not preliminarily and permanently enjoining Defendants from using such information for any purpose in the future.

WHEREFORE, Archer respectfully prays the Court as follows:

1. That Archer have and recover economic damages from Dutcher and questra med, jointly and severally, in an amount to be established at the trial of this matter;

2. That the Court enter an order requiring Dutcher and questra med return to Archer all information either or both of them obtained from Archer's CRM System and preliminarily and permanently enjoining both of them from further use of such information;

3. That a jury trial be had as to all issues so triable;

4. That the costs of this action be taxed against Dutcher and questra med; and

5. That Archer receive such other and further relief as the Court deems just and proper.

This 29th day of August, 2017.

*s/Andrew K. McVey*
Andrew K. McVey
N.C. Bar No. 20217
Amcvey@murchisontaylor.com
Murchison, Taylor & Gibson PLLC
16 North 5th Avenue
Wilmington, NC 28401
Telephone: (910) 763-2426
Fax: (910) 763-6561

STATE OF NORTH CAROLINA

COUNTY OF NEW HANOVER

Peter R. Higgins, being duly sworn, deposes and says that he is the President of Plaintiff Archer Healthcare, Inc. f/k/a AOS Research, Inc., in the foregoing action, that he has read the foregoing Complaint and knows the contents thereof, that the same is true of his own knowledge, except as to those matters and things therein stated on information and belief, and as to those, he believes them to be true.

_____
Peter R. Higgins

Sworn to and subscribed before me this 29 day of August, 2017.

_____
Notary Public
Printed Name: Joyce M. Bonessi

My Commission Expires:
3/31/2022
_____

(seal)